May it please the Court, my name is Stacey Tolchin and I, with my co-counsel Mark Vanderhout, represent the Petitioner. I'd like to reserve two minutes of my time for rebuttal. The Board's decision in this case must be overturned for four reasons. First, the agency impermissibly relied on the birth certificate that was submitted in Petitioner's pre-1995 asylum application, and the regulations are clear that no information from such an application can be used to establish deportability. Second, the birth certificate itself was inadmissible because it was not authenticated and was not certified by the regulations or authenticated by any other means. Let me start, if I could, with your first one, that is that the birth certificate could not be used because it was attached to the asylum application. I understand that argument, but I looked and I've looked in vain to find where that had been raised before the Board from the appeal from the I.J., and I've read and re-read the brief that was submitted on behalf of your client, and I see no place where that issue has been raised, and if that's so, under the usual rules, why isn't it waived? Your Honor, I do believe that the Board was on notice of the argument, albeit it's not ex- No, no, no, that's not the question. Yes. The question is, is it in your paper? Your Honor, there's three points that address the issue. The first is on page 30 of the record. There's a footnote that states that this is a pre-1995 asylum application, citing the regulation that states no information from the asylum application may be used. We've said before that the Board can't search through these things. You have to raise it as an argument. Now, where in your brief to the Board do you specifically raise this issue? Your Honor, there is no specific reference. However, the Court's decision in Socop Gonzales certainly acknowledges that there has to be enough to put the Board on notice of the argument. If our rules are pretty direct, that the Board does not have to search through everything, if you haven't raised it in your brief, why isn't it waived? Well, Your Honor, prior counsel did put forward the fact that he was contesting alienage, that he contested the admissibility of the birth certificate, and he cited to the pre-reform asylum application, albeit it's not explicit. So, Your Honor, if there is an issue or or or it's not a separate argument, but it says the admissions made in the form I-589 could not be used to determine alienage because it was filed prior to the date and then cites the regs. Correct, Your Honor. Page 30 of the record. So, if that were in the body of it under a heading, that would be presumably a sufficient argument. Yes, Your Honor. So, the issue is whether it's enough that it's in a footnote without a heading, basically. You're right. And again, there is the point that alienage itself was contested as well as the admissibility of the document. But if there is an issue as far as exhaustion, I do want to point the Court to the issue of the incomplete transcript. Because we know that there was a June 2nd, 2000 hearing where the issue of alienage was raised before the judge. There was also a 1999 brief where this issue was fully exhausted before the immigration judge. And the judge, there was no transcript of the June 2nd, 2000 hearing at all. And then the judge in her decision in 2003 only on a very cursory level addresses the issue. In fact, she states that this is a pre-reform application. Therefore, the regulations apply. And she also Can you slow down just a little bit, please? Oh, I'm sorry, Your Honor. She also notes that the birth certificate was submitted concurrently with the asylum application and that that was then submitted by the government. And then on the third point, even though she acknowledges that the birth certificate was submitted concurrently and that this is a pre-reform asylum application, she nevertheless says that she can rely on the birth certificate. But there's no reasoning or rationale that's submitted at all by the judge. And surely at the June 2nd, 2000 hearing, this would have been addressed because of the 1999 brief that was submitted, which is in the record at pages 131 to 132. Is that your slowdown speed? I'm sorry, Your Honor. Believe it or not, yes. Believe me, if there was a reporter in this room, you'd be in deep trouble. I'm sorry, Your Honor. If I can, can I — on the birth certificate, the thing that's been troubling me a little bit, too, in terms of your second point about the admissibility of the birth certificate, I'm looking at pages 84, 85, and 86 of the record at the bottom. The — or not at the bottom. On the birth certificate reference, it starts out with — talking about the birth certificate, the IJ says, I'm going to go by the objection that's made on the record after — it's pointed out that it's a birth certificate with a translation. The objection is, well, Your Honor, the court pointed out there's no indication of what country this gentleman is from in the translation. The objection appears to have been in the translation. The judge then goes on to say, I am looking at the document itself, talking about the original with the governmental stamp. At any point, is there any objection to the document that is later put into evidence, I think on page 86, that the original referred to by the judge is not an original and is therefore inadmissible? Not at the hearing, Your Honor, but in the 1999 brief. And then it's explicit, where in page 131 of the record, the 1990 brief — 1999 brief says the government submitted a copy of a birth certificate. Right. What I'm saying, too, is in the record, the judge says — there were copies handed around. The judge says, I am looking at the original. I'm going to use the original, and I can tell from the original that it was Guatemala. Nobody says, hey, that's not an original, do they? So when you say it must have been a copy, the judge said this is the original. Copies were handed out to counsel, and in fact, I think it was Mr. Kaplan who didn't have a copy of the translation. But the only — and then they go on and talk about the birth certificate. No one even suggests that it's not an original, so why don't we take the judge's position, who says on the record twice, this is the original? Your Honor, I think the answer to that is that it's a different context in which the term original in context — What I'm saying is you may think that. You may be right. I don't know. But we have a record. The record, the judge says this is the original with the stamp, and copies are handed out, and the only thing anybody says is, A, Mr. Kaplan says I didn't have a copy of the translation, then says the translation doesn't show Guatemala. The judge again says, I'm going to refer to the original, and I can tell from the original that it is Guatemala. You may think that's what happened, but is there anything in the record that says there was no original there? Well, the brief at page 131 of the record, it's not the transcript, Your Honor, but it is a brief that says that a copy was submitted by the government and then goes on to discuss the regulations. But what I'm trying to get to is the evidence. Right. I understand you may say something in a brief. The brief may have said that. But what I'm saying is I'm looking at the evidence, the transcript of the record, and I'm saying within the four corners of the transcript of the record, the judge mentions original. Nobody says it's not an original. It's a copy. Nobody says which copy is going to be deemed an original. And why do we not accept the judge's statement, especially when no one said, Your Honor, for the record, I want to make clear this is an original. These are all copies. Right, Your Honor. Again, I think it goes to the issue of what does original mean? And to me, when I read this, she was talking about the translation. So if she's handed one document and she's handing a translated document, the term original could mean as opposed to what has been translated. I understand it's not clear. I am, but again Hold on. Aren't we bound to look to what the judge said, the only evidence? And wasn't it incumbent upon counsel for your client to say, I want to clarify on the record, this is not an original. It's not authenticated. I realize, Your Honor, she used the word original, but this isn't an original. But nobody says that. And even when it comes into evidence, no one makes that objection. Why are we supposed to say, oh, well, obviously the judge didn't really mean original. What the judge meant was it's an original copy. Your Honor, again, I think it's because all of the parties were present. And again, even though the court is absolutely bound by the transcript, but the court has to interpret the meaning of the term original. And the court doesn't necessarily have to conclude that she meant an original public document. You went so fast I didn't even follow what you said. I'm sorry. It goes towards the court has to interpret the term original in the record. And so as part of the record The court used the word original. Why did we not accept the court's statement it's an original? Because the original has the word original has two different meanings. One could be an original official publication, and one could be in the context of the translation document. Doesn't the judge know that? Well, because, okay. He's not stupid. He's experienced. So when they say original, why wouldn't we say original? Why would we change the meaning of the record? Your Honor, again, I think the judge was correct to use the term original when she was comparing it to a translated document. Here's the document that was translated. Here's the translation. The first is the original document. I think that was correct. That's one possible explanation. But if we look at it, A, I agree with Judge Wallace. Why would we reinterpret? I assume the judge used the word and knows that it has consequences. And second, if the word was used more than once, wasn't it incumbent upon counsel to clarify the record and say, Your Honor, she's using the term original. That doesn't really mean this is an original document. And especially when the judge said, I'm going to allow this into evidence, wasn't it incumbent upon someone to say, wait a minute. This hasn't been properly authenticated, and it's not an original. It's just a copy. But nobody did that. Your Honor, that is done in the brief that was submitted right after the hearing, not at the transcript. I'd like to reserve the remaining time for hearing. Yes, you may do that. We'll hear from the government. Okay. Good morning. May it please the Court, Kate DeAngelis for the Attorney General. I'm going to go ahead and start just with the issue of the birth certificate. Yes, I'd like to ask you, in fact, in which sense does the government believe the term original was used? That is, can you represent to us that it was, in fact, an original public document of the sort that is required by the regulations to be present as proof of alienage? Well, the government would have to agree with the Court's discussion earlier that the No, no. I'm asking you about the actual evidence that was submitted at the hearing. I'm not asking you about what we've said about it. Do you know the answer to the question? In fact, as to whether it was an original public document of the sort that the petitioner is saying? I can't answer that yes or no. You know, I can go with what the immigration judge said in the transcript. So it's possible, either interpretation is possible. If you can't represent to us that it is that kind of a public document, then you must be saying that both interpretations are possible because you don't know. I suppose both interpretations are possible in this sense. Wouldn't it have been, I'm sorry. Is that why the government wanted to mediate this case? And do you still want to? The government would like to go forward with the case without mediation at this point. The government agreed to mediation because it, you know, prefers to give an alien every opportunity that it can, you know, if it sees a possibility. But in this case, I don't believe mediation is necessary. It's never necessary, but you agreed to it until we said no. And I'm interested in why you're no longer interested. Is it because you've had to go to the trouble of coming to appear, or is there something else going on there? No, I think that we felt that DHS would not be amenable to what the petitioners were asking, but we wanted to give them the benefit of the doubt and give them a chance, a limited amount of time, to discuss the possibility of reopening, you know, to do what they wanted to do, which was to apply for voluntary departure in the first instance. So we didn't feel that it would necessarily And the government is no longer open to voluntary departure? It's an issue that we feel has expired. It wasn't raised at the proper time. It's, we're not, no, not at this point. And you're authorized by your superiors in Washington to say this? Well, I, we've discussed with DHS and I, you know, we would have to discuss with DHS again to be, you know, positive that there's no chance that they would want to reopen this for voluntary departure. It would be very unusual that they wouldn't, given this situation. I'd like to, if possible, raise Let me come back to the birth certificate and follow up on Judge Faber's question. Given that this was raised in the briefs for the BIA in here, wouldn't it have been incumbent upon someone in your office to go check and see so they could represent to the court what the birth, whether it was an original birth certificate or not, and how the judge, the IJ, was using the term original? I mean, I would, I'm just kind of astounded. I would think that one of the easiest things you could do would be to check and find out did we have an original birth certificate or not? And nobody's checked that is what you're saying. Well, I'd like to say that I think there's an important issue here that comes before whether the birth certificate was an original or a copy, which is There may be, but I'm just like, am I correct? No one has checked the evidentiary record to see, or checked with anybody at the hearing to see if it was in fact an original. Beyond examining the copy that's in the administrative record, no. And it's a copy. In the administrative record, it's obviously a copy of whatever was submitted to the immigration judge. I mean, we don't have But you have no way of knowing whether it was a copy of a copy. I can look into that. If the court's interested, I can, you know, contact DHS and try and go back and get, you know, Does this come under the heading of just after the nick of time? I'd like to just argue my point that this court has held that evidence of foreign birth shifts the burden to the petitioner to show that he in fact is not an alien. In this case, there was a birth certificate in the record, which should have shifted the burden of proof to petitioner. If it was admissible. It's true. But Then do you agree if it was not admissible, there is no evidence to have shifted the burden? Well, I don't necessarily agree that the birth certificate itself would not establish, given the name, the name comparison. No, no. Assuming that it was inadmissible, should not have been considered or was not sufficient proof of the contact with Guatemala. Do you agree, then, that there was no evidence of the Guatemala contact? You mean of alienage? Alienage. Well, I mean, the fact that this petitioner filed an affirmative asylum application without raising any sort of claim that he is in fact a U.S. citizen or an LPR in itself, I think raises, you know, an arguable Do you agree or disagree with the proposition that there had to be some admissible, proper evidence of alienage introduced into the record in order to support a removal or deportation? Yes.  I agree. Okay. So if the birth certificate was not admissible, is there any other evidence that was admissible that established alienage? No, the government relied upon the birth certificate to establish alienage. So everything rises or falls on whether it was admissible, and that in turn all rises or falls on whether it was properly authenticated under the government's own regulations, right? Okay. Yes. And you can't represent to us today that it was such a proper document, as I'm, you just don't know. Beyond what's in the record, beyond what's in the transcript, the immigration judge's acknowledgement that she felt that it was an original, no, I can't, I can't go beyond that. And I guess his statement that he made where he says, my hometown in Guatemala, that that can't be used? Well, according to the pre-reform regulations, information contained within the form I-589 If it happened today, obviously we wouldn't have the problem. I'd like to raise another argument about the Let me first ask you one question. If we were to agree with the petitioner's argument here, presumably the government would have another opportunity to start over, yes or no? Would the petition be granted? I'm sorry, I don't understand. Well, if we agree that there was no evidence of alienage, then where does the petitioner stand on a permanent basis? Is this it? Is this the end of the road? Or is this the government's only opportunity? I believe that the issue of alienage would not be able to be re-litigated in the immigration context if the court decided that alienage had not been established. Home free. Home free, yes. If there are no other questions on that issue, I'd like to just discuss briefly the issue of whether forms or documents attached to or submitted with an asylum application are considered part of that application. I'd like to just set forth our argument that, in fact, the regulations refer to the I-589 form as the asylum application. In fact, CFR 208.3 Section A refers to an asylum applicant must file form I-589 and defines it as application for asylum and withholding of removal. So the regulations are not clear, as petitioners have asserted, that documents submitted in support of or with or at the same time as an I-589 application for asylum are actually considered part of that application. If there are no other questions, I guess the government will rest the argument at that. Okay. Thank you. Thank you, counsel. Okay. Just a couple of quick things. First, I do want to point out that the regulations at 8 CFR 1240.8C require that first the government establish alienage, and the court's decision in Ramon Sepulveda establishes that alienage must be proven by the government by clear, convincing, and unequivocal evidence. We don't have that from the record. Let me ask you the same question that was posed to the government. Can you represent to the court in any fashion whether it was or was not an original birth certificate? I cannot. Only I'm limited by the record. That's what I'm saying. Sorry. Go ahead, Your Honor. When you talked, I didn't see his lips move. What I'm saying is the same question. You cannot, from any personal knowledge or any investigation you or a co-counsel have done, represent whether that was an original birth certificate at the hearing or not? Not at this time. But I could just ask the client if we went to mediation or a postponed argument. That's certainly possible. In addition, the court asked the question of what happens if this case is terminated. I do want to remind the court that the petitioner is eligible for an immigrant visa, as we did notify the court of earlier. And I do, of course, want to direct the court to Ramon Sepulveda and the recent decision in Bravo-Pedrosa, which established that if the government has not met its burden in establishing alienation, the case is terminated. You're over your time by quite a bit, but you may have a very short summary. Very quickly, just the administrative notice on changed country conditions, which is separate from the alienation. We believe there was an abuse of discretion in failing to provide notice and an opportunity to respond in changed country conditions. Thank you, counsel. Have you seen the notices on the commercials? It's the time crunch. I'm sorry. I'm exhausted. The case just argued is submitted. I feel like I'm sort of a slow moving, slow talking something or another here. We'll next hear argument in Van Smith v. Franklin.
judges: Wallace, Graber, Gould